**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | |
|---|---|
| JACK GARSON and MARCY GARSON ) | |
| 11223 River View Drive ) | |
| Potomac, MD 20854 ) | |
| Montgomery County ) | |
| ) | |
| Plaintiffs ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| HYGEA HOLDINGS CORP. ) | JURY TRIAL DEMANDED |
| 8095 NW 12th Street, Suite 105 ) | |
| Doral, FL 33126 ) | |
| ) | |
| <u>Registered Agent</u>: ) | |
| Lacy Loar ) | |
| 8095 NW 12TH Street Suite 105 ) | |
| Miami, FL 33126 ) | |
| ) | |
| and ) | |
| ) | |
| DAWSON JAMES SECURITIES, INC. ) | |
| 30 Columbia Corporate Center ) | |
| 10440 Little Patuxent Parkway ) | |
| Suite 200 ) | |
| Columbia, MD 21044 ) | |
| Howard County ) | |
| ) | |
| <u>Serve</u>: ) | |
| Thomas Russell Curtis Sr. ) | |
| Managing Partner ) | |
| 30 Columbia Corporate Center ) | |
| 10440 Little Patuxent Parkway ) | |
| Suite 200 ) | |
| Columbia, MD 21044 ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

Plaintiffs Jack and Marcy Garson, by and through their attorneys, alleges as follows for the Complaint against Defendants Hygea Holdings Corp. and Dawson James Securities, Inc.:

## Nature of Action

1. This action is a federal securities claim action, with ancillary state law claims for breach of contract, unjust enrichment, and fraudulent misrepresentation, being brought by individual residents of Maryland, Mr. and Mrs. Garson, relating to their purchase of unregistered securities as part of a private offering by Hygea Holdings Corp. and its sole placement agent, Dawson James Securities, Inc.

2. As set forth below, in connection with the private placement, Hygea Holdings Corp. represented, through itself and its sole placement agent, that Hygea Holdings Corp. would in good faith take prompt action to register the securities at issue, and legally bound itself to do the same. These representations were materially false and misleading, as Hygea Holdings Corp. had no intention of honoring those representations and contractual commitments and, in fact, has not done so.

3. Plaintiffs seek to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as well as for fraudulent misrepresentation generally and breach by Hygea Holdings Corp. of its contractual obligations to in good faith take action to register those securities.

## Parties

4. Plaintiffs Jack Garson and Marcy Garson are residents of the State of Maryland, residing in Potomac, Maryland.

5. Defendant Hygea Holdings Corp. ("Hygea") is a Nevada corporation with its principal place of business in Miami, Florida. As evidenced by its sale of the securities at issue to Plaintiffs, Hygea transacts business within the State of Maryland.

6.     Defendant Dawson James Securities, Inc. ("Dawson James") is a Florida corporation with its principal place of business in Boca Raton, Florida.  Dawson James maintains a Maryland branch office located at 30 Corporate Center, 10440 Little Patuxent Parkway, Suite 200, Columbia, Maryland  21044.

## Jurisdiction and Venue

7.      The federal claims asserted herein arise under and pursuant to the anti-fraud provisions of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

8.     This Court has jurisdiction of the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1935, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

9.     This Court has supplemental (pendent) jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in this Judicial District pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as all of the Defendants transact business within this Judicial District.

## Factual Background

11.    On January 7, 2013, Hygea filed with the United States Securities and Exchange Commission a Form D Notice of Exempt Offering of Securities, in which Hygea stated its intention to make a private offering of securities pursuant to Rule 506, in the total offering amount of $4,320,000.

12.    Dawson James was sole placement agent for this private offering.  Specifically, in the Form D Notice, addressed above, Dawson James was identified as the sales entity for the private offering, with sales commissions to Dawson James estimated at ten percent of the total offering, or $432,000.

13.     The Garsons also were clients of Dawson James, and held a brokerage account with Dawson James that was administered by Mr. Thomas Russell Curtis, Sr., the Branch Manager for Dawson James' Maryland office.

14.     In late 2013, Mr. Curtis contacted Mr. Garson, and proposed that the Garsons invest in the private offering.  Mr. Curtis represented that the offering would be an appropriate investment for the Garsons and provided them with information regarding that offering.

15.     In particular, in late December 2013, Dawson James sent to Mr. Garson a "Confidential Private Placement Memorandum for Accredited Investors Only" that was dated May 31, 2013 (the "Placement Memorandum" or "Memorandum").  This Memorandum had been prepared by Hygea and Dawson James in connection with the offering.  With the Placement Memorandum, Dawson James also provided to Mr. Garson additional documentation relating to the proposed investment, including the Subscription Agreement (the "Subscription Agreement"), the Hygea Holdings Corp. Common Stock Purchase Warrant (the "Warrant"), and the Registration Rights Agreement (the "Registration Rights Agreement").

16.     In the Memorandum, Hygea and Dawson James stated their intention to sell up to 120 units (referred to as "Units"), with each Unit consisting of 200,000 shares (the "Shares") of common stock, $0.0001 par value ("Common Stock"), and a Common Stock Purchase Warrant (the "Warrants") to acquire 100,000 shares of Common Stock (the "Offering").  The Units, Shares and Warrants are collectively referred to hereinafter as the "Securities."

17.     Although the Securities were being sold as having not yet been registered under the Securities Act of 1933, Mr. Curtis, in selling the Offering to the Garsons in late December 2013, represented that the Securities would be registered promptly following the Offering.

18. Similarly, in the Placement Memorandum that Dawson James sent to the Garsons in late December 2013, Hygea and Dawson James noted that the Offering securities had not been registered, but included in the "Terms of the Offering" that, "[w]ithin 90 days of the termination of this Offering, the Company shall file a Form S-1 Registration Statement registering the Shares and shares of Common Stock underlying the Warrants for Resale."

19. Hygea and Dawson James further stated in the Placement Memorandum that Hygea's "Form S-1 Registration Statement with the Securities and Exchange Commission has been declared effective," but registration had been delayed because Hygea still needed to file "three quarterly reports and an annual report for the year ended December 31, 2012 in order to become current." The overall representation, consistent with what Mr. Curtis had told the Garsons, was that the Securities were being sold unregistered but that Hygea would move quickly to register the Securities so that the Garsons would be able to sell their Hygea stock.

20. In addition to the foregoing, the Subscription Agreement prepared by Hygea and Dawson James provided that the Holder of the Securities "is entitled to the registration rights with respect to the Warrant Shares as set forth in that certain Registration Rights Agreement between the Company and the Holder of even date herewith."

21. That Registration Rights Agreement provided, in part, as follows:

> Within 90 days of the termination of this Offering, the Company shall file a Form S-1 Registration Statement registering the Registrable Shares for resale (the "Registration Statement") with the Commission, registering the shares of Common Stock of the Company and the Registrable Securities underlying the Warrant, for resale. The Company shall use its reasonable best efforts to cause such Registration Statement to be declared effective by the Commission as soon as practicable thereafter and the Company shall use its good faith efforts to cause such Registrable Securities to be registered under the Securities Act to the extent necessary to permit its sale or other disposition.

22. In reliance upon the representations, repeatedly made by Mr. Curtis, Hygea and Dawson James, and their contractual undertakings as described above and in the Offering documentation, that the Securities were being sold as unregistered but that Hygea would act promptly to register those Securities so that they could be sold, in late December 2013, the Garsons signed the Subscription Agreement, the Purchase Agreement, and the Registration Rights Agreement, and returned them to Mr. Curtis, for signature by Hygea.

23. The Garsons understood that Dawson James would obtain the signatures for Hygea on each of the foregoing agreements, and that Dawson James, as the Garsons' broker, would hold the fully-executed agreements for the Garsons in trust.

24. With the signed agreements, the Garson also paid to Hygea's agent the sum of $60,000, which was the purchase price for two Units of the Offering. Hygea accepted this subscription and delivered the Securities to Dawson James, which held the Securities for the Garsons.

25. In 2015, the Garsons chose to close their account with Dawson James. In connection with that closing, the Garsons attempted to transfer the Securities to a new broker, but the transfer was denied. The Garsons then discovered that the Securities remained unregistered, and that this prevented them from being transferred from Dawson James to the Garsons' new broker. The Garsons also learned that Dawson James had not obtained from Hygea the fully-executed copy of, among other things, the Registration Rights Agreement that the Garsons had signed in 2013.

26. Dismayed in learning that Hygea evidently had not complied with its legal obligations to register the Securities, Mr. Garson wrote to Hygea on May 27, 2015. In that letter, Mr. Garson requested a copy of the signed Registration Rights Agreement, and asked that Hygea

describe the actions taken by Hygea to comply with its registration obligations under the Registration Rights Agreement and related documents.

27. Hygea did not respond to Mr. Garson's May 27, 2015 letter within the timeframe requested, or at any time thereafter, and has failed to provide any information regarding any attempts to comply with its legal obligations to register the Securities.

28. Moreover, based upon a review of the applicable databases, it appears that Hygea also did not file the "pre-approved" Form S-1 Registration Agreement, as was represented, warranted, and required by the Offering documentation.

29. On February 3, 2014, Hygea filed with the Securities and Exchange Commission an Amended Form D Notice of Exempt Offering of Securities, indicating that Hygea had sold $3,060,100 in Securities as part of the Offering, and that Dawson James had been paid $306,010 in sales commissions. The sales are identified as having been made in Maryland and fourteen other states.

## COUNT I
### (Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 Against All Defendants)

30. Plaintiffs reference and repeat the allegations of Paragraphs 1 through 29, as if fully set forth herein.

31. Defendants, in connection with the sale of the Securities, by the use and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly:

    a) employed devices, schemes, and artifices to defraud;

    b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

       c)      engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

      32.      Without limitation, and as described in more detail above, Defendants deliberately misrepresented that the Securities would be registered, and/or that actions would promptly be taken so that the Securities would be registered, while knowing and intending that the Securities would not be registered and that such actions would not be taken.

      33.      Defendants made such misrepresentations and engaged in such devices, schemes and artifices to defraud knowingly, intentionally, and/or recklessly, intending that Plaintiffs rely upon such representations in order to persuade them to purchase the Securities.  In engaging in such conduct, Defendants acted with an intent to deceive, manipulate or fraud or with a severe reckless disregard for the truth.

      34.      In reliance upon the foregoing misrepresentations and material omissions, Plaintiffs were induced to Purchase the Securities.

      35.      As a direct and proximate result of Defendants' unlawful conduct, as described above, Plaintiffs were damaged in that they purchased the Securities for $60,000, and that such Securities, by virtue of not having been registered, have little or no current value.

      WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

      a)      For compensatory damages in the amount of $60,000, plus interest;

      b)      For Plaintiffs' costs, including reasonable attorneys' fees; and

      c)      For such other relief as the Court deems just.

## COUNT II
**(Fraud Against All Defendants)**

36. Plaintiffs reference and repeat the allegations of Paragraphs 1 through 35, as if fully set forth herein.

37. As described in more detail above, Defendants deliberately misrepresented that the Securities would be registered, and/or that actions would promptly be taken so that the Securities would be registered, while knowing and intending that the Securities would not be registered and that such actions would not be taken.

38. Defendants knew at the time that they made these false representations and concealed the material facts alleged above that such representations were untrue and that Defendants were concealing material facts from Plaintiffs.

39. Defendants acted with the intention to deceive and mislead Plaintiffs, to fraudulently induce Plaintiffs to purchase the Securities, and thereby enable Defendants to profit therefrom.

40. Plaintiffs were induced by Defendants' misrepresentations and material omissions, and acted in reliance thereon in purchasing the Securities.

41. As a direct and proximate result thereof, Plaintiffs have been damaged in that they purchased the Securities for $60,000 and such Securities have little or no market value.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a) For compensatory damages in the amount of $60,000, plus interest;

b) For Plaintiffs' costs, including reasonable attorneys' fees; and

c) For such other relief as the Court deems just.

## COUNT III
### (Unjust Enrichment Against All Defendants)

42. Plaintiffs reference and repeat the allegations of Paragraphs 1 through 41, as if fully set forth herein.

43. As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs, in that Defendants have unjustly received the Plaintiffs' payment for the Securities or, in the case of the broker Defendants, commissions or other payments relating thereto.

44. Defendants were aware of, and had knowledge of, the benefits unjustly conferred upon them.

45. It would be inequitable for the Defendants to retain the benefits of the foregoing payments and commissions under the foregoing circumstances, if return value or payment is not made to the benefit of Plaintiffs.

46. Defendants should be required to disgorge all monies, profits, and gains that they have obtained at the expense of Plaintiffs.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, as follows:

a) For compensatory damages in the amount of $60,000, plus interest;

b) For Plaintiffs' costs, including reasonable attorneys' fees; and

c) For such other relief as the Court deems just.

## COUNT IV
### (Breach of Contract Against Hygea)

47. Plaintiffs reference and repeat the allegations of Paragraphs 1 through 46, as if fully set forth herein.

48. In the Subscription Agreement, Registration Rights Agreement, and related documentation, Hygea legally bound itself to in good faith take certain actions in order to obtain registration of the Securities, all as more particularly described above.

49. Hygea breached those contractual obligations by failing to obtain registration of the Securities and failing to take the actions to secure registration that were required by its legal obligations.

50. Plaintiffs were damaged by Hygea's breach, as Plaintiffs have lost the value of registration of the Securities, which, as a result, have little or no market value.

WHEREFORE, Plaintiffs demand judgment against Hygea, as follows:

a) For compensatory damages in the amount of $60,000, plus interest;

b) For Plaintiffs' costs, including reasonable attorneys' fees; and

c) For such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable in this action.

Respectfully submitted,

/s/ Eric Scott Lammers
Eric Scott Lammers (Bar No. 15886)
Charles R. Claxton (Bar No. 02525)
W. Elliott Hunter (Bar No. 19329)
Garson Claxton LLC
7910 Woodmont Avenue, Suite 650
Bethesda, Maryland 20814
Telephone: (301) 280-2700
Facsimile: (301) 280-2707
Email:   rclaxton@garsonlaw.com
    elammers@garsonlaw.com
    ehunter@garsonlaw.com

*Attorneys for Plaintiffs Jack and Marcy Garson*